# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**HILLREY BEGGS, et al.**,

       Plaintiff,

   vs.                              No.     09cv968 MCA/GBW

**THE CITY OF PORTALES, a
municipal corporation,**

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on *Defendant's Motion and Memorandum for Summary Judgment Based on the Statute of Limitations* [Doc. 16], filed December 9, 2009; Defendant's *Amended Motion and Memorandum in Support of Defendant's Motion for Summary Judgment on Counts III and IV of Plaintiffs' Amended Petition* [Doc. 23], filed January 12, 2010; *Defendant's Motion to Strike and for Protective Order (Based on Attorney-Client and Deliberative Process Privileges)* [Doc. 49], filed March 1, 2010; *Plaintiffs' Motion to Partially Strike Affidavit of Debi Lee [Paragraphs 4, 5, 8 and Exhibit One] and Memorandum in Support* [Doc. 53], filed March 2, 2010; and *Plaintiffs' Motion and Memorandum to Strike Affidavits of Stephen Doer from "Defendant's Reply to Plaintiffs' Response to Motion to Strike and for Protective Order (Based on Attorney-Client and Deliberative Process Privileges) [Document 62 Filed 03-26-10]* [Doc. 64], filed March 30, 2010.  Having considered the parties' submissions, the relevant law, and otherwise being

fully advised in the premises, the Court grants Defendant's *Amended Motion and Memorandum in Support of Defendant's Motion for Summary Judgment on Counts III and IV of Plaintiffs' Amended Petition* [Doc. 23], declines to exercise supplemental jurisdiction over the Plaintiffs' state-law claims, and denies the remaining pending motions as moot.

## I. BACKGROUND

### A.    Factual Background

The following allegations are either undisputed or taken from Plaintiffs' *Amended Petition for Declaratory Judgment for Breach of Contract; Detrimental Reliance and for Violation of Civil Rights Pursuant to 42 U.S.C. § 1983* and, for purposes of Defendant's summary-judgment motion, are viewed in a light most favorable to the non-movants, with all reasonable inferences being drawn in their favor.  See Turner v. Public Service Co. of Colorado, 563 F.3d 1136, 1142 (10th Cir. 2009).

Plaintiffs in this action are all former employees of Defendant City of Portales, New Mexico ("the City"), and retired on or about the following dates:

|   |   |   |
|---|---|---|
| 1. | Melvina Crockett: | On or about August 31, 1995 |
| 2. | Jose Gutierrez: | November 1996 |
| 3. | Miguel Lucero: | On or about December 27, 1996 |
| 4. | Hillrey Beggs: | On or about December 31, 1997 |
| 5. | Curtis Wagner: | On or about December 29, 1998 |
| 6. | Gary Watkins: | September 10, 1999 |
| 7. | Jim Wood: | On or about September 20, 1999 |
| 8. | Peggy Newbanks: | December 29, 1999 |
| 9. | Arly Hamner: | On or about August 31, 2001 |
| 10. | Alan Wofford: | On or about December 31, 2002 |
| 11. | Pete Lucero: | On or about August 29, 2003 |
| 12. | Marcario Saiz: | On or about September 30, 2003 |
| 13. | Ralph Pellicott: | On or about March 1, 2004 |

[See Doc. 25; Exhs. 16-28].

As of March 2004, the latest date by which any one of the plaintiffs herein retired, the City's personnel policy, which had been enacted in 1994 ("the 1994 personnel policy"), included Section 629, "Retiree Health Care Insurance" ("Section 629").   Section 629 provided that

> [t]he City of Portales shall offer employees upon their retirement the option of continuing their group health and life insurance coverage through the City's group plan, provided they are enrolled in the group health plan at least one year prior to retirement.  The cost of the insurance for the retiree shall be the same as the cost for regular employees.  If the City is paying 75% of the premium for employees, the City shall pay 75% of the premium for the retiree and shall be budgeted out of the department from which the employee retires.  Retirees shall be responsible for paying their portion of the premium on a monthly, timely basis, in order to avoid the lapse of their policy coverage.
>
> Conditions of the policy coverage shall apply in accordance with the retiree's age and circumstances on an individual basis.

[Doc. 23; Exh. C].

On July 18, 2000, the City adopted Ordinance No. 624, by which it opted to be included in coverage under the New Mexico Retiree Health Care Act ("NMRHCA"). [Doc. 23; Exh. E-2].  A letter dated November 21, 2000 and addressed to "[a]ll retirees/surviving dependents of the City of Portales" explained, among other things, that (1) eligible individuals were being given the option of purchasing medical benefits through the NMRHCA for a portion of the actual cost; (2) the program fund would subsidize a portion of participants' monthly medical premiums; and (3) coverage through the City would

3

terminate December 31, 2000. [Id.; Exh. E-4].  According to the City, its decision to opt into NMRHCA coverage was driven by the need "to control the cost of retiree health care to the City of Portales. . . ." [Id.; Exh. E-3].  At that time, the City resolved to participate in the premium of a retiree's chosen plan at the same rate the City had been participating.  [Id.; Exh. E-3].  However, in a letter dated February 16, 2002 and addressed to "[a]ll [r]etirees," a representative of the City's finance department explained that retiree health care rates were increasing, and that "[t]he City [would] pay 50% of the increase. . . ." [Id.; Exh. E-5].

The 1994 personnel policy continued in effect until May 3, 2005, when the City, at a regularly scheduled City Council meeting, adopted a new policy ("the 2005 personnel policy"), which replaced the existing one.  Importantly, the 2005 personnel policy made no reference to the City's payment or reimbursement of retiree insurance benefits. [See Doc. 25; Exh. 9].

### B.   Procedural Background

On October 11, 2005, Plaintiffs filed their *Petition for Declaratory Judgment and for Breach of Contract* in the Ninth Judicial District Court, County of Roosevelt, State of New Mexico. [Doc. 13; Exh. A].  Plaintiffs alleged that (1) through Section 629, the City maintained  a policy, practice, custom, and routine to pay 75% of City retirees' health insurance premiums; (2) Plaintiffs relied to their detriment on this policy, practice, custom, and routine by, among other things, foregoing other employment at higher wages in exchange for the receipt of a post-retirement "stream of benefits;" and (3) the City's elimination of Section 629 constitutes a breach of its agreement to reimburse retirees 75%

of their health insurance premiums. [See id.; Exh. A].  On October 20, 2005, Plaintiffs amended their *Petition*, and on March 6, 2006, the City moved for summary judgment, arguing, among other things, that any policy the City might have had that addressed the reimbursement of retirees' health insurance premiums created no contract rights and, for that reason, Plaintiffs' breach-of-contract claim failed as a matter of law. [Id.; Exhs. G, FF, GG].

On June 2, 2006, Judge Robert S. Orlik of the Ninth Judicial District Court issued a *Decision Letter* in which he explained that, pursuant to Whitely v. New Mexico State Personnel Bd., 850 P.2d 1011 (N.M. 1993), "it is well established that statutes fixing the compensation or terms of public employment are presumed merely to establish public policy subject to legislative revision and not to create contractual or vested rights." [Doc. 13; Exh. OOO at 2 (emphasis in original)].  The *Decision Letter* was followed by an *Order* whereby Judge Orlik entered summary judgment in favor of the City. [Id.; Exh. OOO at 3].  The New Mexico Court of Appeals affirmed.  See Beggs v. City of Portales, 167 P.3d 953 (N.M.App. 2007).

The New Mexico Supreme Court, however, reversed and remanded.  See Beggs v. City of Portales, 210 P.3d 798 (N.M. 2009) ("Beggs II").  That court concluded that genuine issues of material fact existed as to whether the City's offers to reimburse retiree insurance premiums, as extended by the terms contained in Section 629, and Plaintiffs' acceptance of those offers, constituted binding contracts.  Id. at 799.  In distinguishing Plaintiffs' situation from that existing in Whitely, the Supreme Court explained that, whereas the plaintiffs in Whitely could claim no contractual rights arising solely from the policies expressed in an

5

ordinance, Plaintiffs here were asserting rights stemming from (1) the 1994 personnel policy; (2) the conduct of the parties; and (3) various oral and written representations.  Id. at 801. Thus, the court determined that summary judgment was inappropriate where factual questions remained as to "the existence of contractual rights on behalf of Retirees *to continue receiving health insurance benefits at the rate they allege they and the city agreed upon* at the time of their retirement."  Id. at 803 (emphasis added).

The Supreme Court's decision was handed down on May 20, 2009; the mandate issued on June 9, 2009; and on September 17, 2009, Plaintiffs successfully filed their *Motion to Amend Complaint* so as to add Counts III and IV, which allege, respectively, violations of their Fourteenth Amendment procedural and substantive due process rights.   [Doc. 13; Exhs. TTT; AAAA].  On October 6, 2009, the City removed the action to this Court. [See Doc. 1].

The City then filed, among other motions, the *Amended Motion and Memorandum in Support of Defendant's Motion for Summary Judgment on Counts III and IV of Plaintiffs' Amended Petition* that is currently before the Court.  In this motion, the City contends that (1) Plaintiffs do not have a constitutionally protected property interest in the right to be reimbursed for insurance premiums; (2) even if Plaintiffs *did* have such a right, they were not deprived of that right without adequate process; and (3) any deprivation Plaintiffs might have suffered was neither arbitrary or capricious nor conscious-shocking. [See generally Doc. 23].

Plaintiffs contend that the City is not entitled to summary judgment because they have a contractual right to, as well as a vested property interest in, retiree health insurance

6

benefits, and that the City, in no longer reimbursing Plaintiffs' health insurance premiums, has deprived them of this property interest without due process of law.  Plaintiffs additionally assert that the City's action was arbitrary and capricious and such an abuse of power as to be conscious-shocking. [See generally Doc. 38].

## II. ANALYSIS

### A. Standard of Review

#### 1. Summary Judgment

Summary judgment under Fed.R.Civ.P. 56(c) "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2).  "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading. . . ."  Fed.R.Civ.P. 56(e)(2).  Instead, "its response must . . . set out specific facts showing a genuine issue for trial."  Id.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses,

or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### B. 42 U.S.C. § 1983

As is relevant here, and with respect to Counts III and IV of their *Amended Petition*, Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983. [See Doc. 1; Exh. 1 at 9-11].  Section 1983 of Title 42 of the United States Code provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 is not an independent source of substantive rights; rather it is a mechanism for enforcing federal rights conferred elsewhere, see Albright v. Oliver,  510 U.S. 269, 271 (1994), and provides a remedy "for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law." Curley v. Klem, 298 F.3d 271, 277 (3rd Cir.2002).  Accordingly, an analysis of a plaintiff's federal civil-rights claim necessarily begins by identifying the specific

constitutional right or rights allegedly infringed.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).

In this case, through their *Amended Petition*, Plaintiffs have alleged, in pertinent part, that they "had a protected property interest [in] their retiree health insurance benefits that could not be terminated without due process of law." [Doc. 1; Exh. 1 at 9].  However, the City "deprived Plaintiffs of their property interest and continue[s] to deprive Plaintiffs of their *right to receive reimbursement* for retiree health insurance without affording them procedural due process. . . ." [Id.; Exh. 1 at 9 (emphasis added)].  According to Plaintiffs, the City "continues to deprive [them] of their property rights *in health insurance reimbursement* each and every month with the City . . . in violation of their rights to due process." [Id.; Exh. 1 at 9 (emphasis added)].  Finally, Plaintiffs assert that the City's actions "in refusing to pay and continuing to refuse to pay Plaintiffs['] retiree health insurance *premiums* is unfair, arbitrary, and capricious and violates Plaintiffs['] rights to substantive due process, as protected by the Fourteenth Amendment." [Id.; Exh. 1 at 10 (emphasis added)].

### 1. The Fourteenth Amendment and the Evolving Concept of Property Rights

The Fourteenth Amendment to the United States Constitution protects citizens from the deprivation of "life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1.  Due process rights are both procedural and substantive:

> [P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those

9

rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision.

Archuleta v. Colorado Dept. of Insts., Div. of Youth Servs., 936 F.2d 483, 490 (10th Cir. 1991).  In order to prevail on a § 1983 claim for violation of the *procedural* due process rights guaranteed by the Fourteenth Amendment, a plaintiff must show that he (1) possessed a protected liberty or property interest; and (2) was deprived of that interest without due process.  See Copelin-Brown v. New Mexico State Personnel Office, 399 F.3d 1248, 1254 (10th Cir. 2005).  To sustain a *substantive* due process claim, a plaintiff must demonstrate that he was deprived of a fundamental constitutional right by government action that is arbitrary or "conscience-shocking."  Walker v. City of Waterbury, 2010 WL 114186, at *1 (2nd Cir. Jan. 13, 2010) (city's conduct in negotiating new collective bargaining agreement that denied firefighters allegedly vested pension benefits was not arbitrary, outrageous, or conscious-shocking, as required to establish substantive due process claim, where, among other things, city acted in face of severe financial crisis).

While the Constitution protects property interests, it does not create them.  Instead, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).  As the United States Supreme Court made clear in Roth, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more

10

than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Id.

Roth was decided two years after the Supreme Court issued Goldberg v. Kelly, in which the Court held that the Due Process Clause requires that a welfare recipient be afforded an evidentiary hearing prior to the termination of his benefits.  Goldberg v. Kelly, 397 U.S. 254, 263-264 (1970).  In concluding that "when welfare is discontinued, *only* a pre-termination evidentiary hearing provides the recipient with procedural due process[,]" id. (emphasis added), the Court accepted welfare entitlements as a form of property that serve as a means of fostering the dignity and well-being of those who require such assistance.  Id. at 262 n.8 ("It may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.'").  Welfare, explained the Court, provides eligible recipients with a manner by which to obtain such *essentials* as food, clothing, housing, and medical care.  Thus, to terminate such aid to a qualified recipient pending resolution of a controversy over his eligibility would be to deprive that individual "of the very means by which to live while he waits."  Id. at 264.

Moreover, because the purpose of the welfare system is to ensure that qualified recipients possess the means for daily subsistence, welfare entitlements promote basic constitutional guarantees in a way that other governmental benefits (*e.g.*, business or farming subsidies, government contracts, tax exemptions) do not.  To be sure, welfare "can help bring within the reach of the poor the same opportunities that are available to others to participate meaningfully in the life of the community."  Goldberg, 397 U.S. at 265.  Because it serves

11

to ensure that the daily fundamental needs of eligible recipients are met, "[p]ublic assistance, then, is not mere charity, but a means to 'promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity.'" Id.

Given the purpose that welfare benefits are intended to serve, it is not difficult to see why a qualified recipient logically could assert a legitimate claim of entitlement to such benefits, and thus a constitutionally protected property interest as defined by Roth. Welfare benefits, of course, are just one example of property afforded procedural due process protection under the Fourteenth Amendment. In Perry v. Sindermann, the Supreme Court held that a junior college professor, who had been in his position for a number of years, might be able to show, from both the circumstances of his service and from other relevant facts, that he had a legitimate claim of entitlement to job tenure, notwithstanding that his employer had a *de facto*, rather than a formal, tenure program. Perry v. Sindermann, 408 U.S. 593, 602 (1972). Similarly, in Mathews v. Eldridge, the Court made explicit what it explained "ha[d] been implicit in . . .prior decisions," which is that an individual's continued receipt of social security disability benefits is a constitutionally protected, statutorily created property interest. Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

One common thread among Goldberg, Perry, and Mathews is that, in all three cases,

> procedural protection [was] sought in connection with a state's revocation of a *status*, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits.

S & D Maintenance Co., Inc. v. Goldin, 844 F.2d 962, 966 (2nd Cir. 1988) (emphasis in original).  This is important because not every benefit rises to the level of a constitutionally protected property interest and, therefore, not every alleged deprivation of a benefit previously conferred demands due process protections.  Indeed, "[t]he question whether there was a deprivation of property is logically prior to the question whether there was a denial of due process. . . ."  Brown v. Brienen, 722 F.2d 360, 363 (7th Cir. 1983).

Keeping in mind that the Constitution protects, but does not create, property rights, "[w]here the property interest is related to employment, courts often look to the relevant law, contract, or regulation governing the employment to determine whether a property interest is protected by the Fourteenth Amendment."  Jackson v. Roslyn Bd. of Educ., 652 F.Supp.2d 332, 339 (E.D.N.Y. 2009).  And while some breaches of public employment contracts may very well rise to the level of a denial of a constitutionally protected property interest, "there is no rule that every breach of a public employment contract is a deprivation of property within the meaning of the due process clause."  Brown, 722 F.2d at 364.  The rationale for such a rule (or lack of a rule) is understood by remembering that "the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts."  Id.  In other words, 42 U.S.C. § 1983 does not "displace[] the whole of the state law of public contracts into the federal courts" simply because a litigant characterizes an alleged breach of contract "as a deprivation of property without due process of law[.]"  Id. at 362-363.

In Brown, sheriff's department employees who, pursuant to county ordinance, were granted time off in exchange for an equal number of overtime hours worked, brought a civil

13

rights action against the department, alleging that the ordinance, in combination with the sheriff's announced intention of granting the time off, created a property interest, and that the department, in refusing to allow the employees to take their accrued time off, deprived them of that property without due process of law.  Brown, 722 F.2d at 362.  Affirming the district court's entry of summary judgment for the department, the Seventh Circuit held that, even if the employees *had* been denied a protected property interest, they were nevertheless provided adequate process.  Id. at 364-365.  Although the court did not resolve the issue of whether the department had deprived its employees of a property interest within the meaning of the Fourteenth Amendment, its analysis suggests that it would have answered this question in the negative, having explained that (1) "the Constitution must not be trivialized by being dragged into every personnel dispute in state and local government[;]" (2) "[o]nly interests substantial enough to warrant the protection of federal law and federal courts are Fourteenth Amendment property interests[;]" and (3) "[d]isputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment."  Id.  Were the employees to pursue their breach-of-contract allegation "in a suit in state court under state law[,]" they "would [receive] process—in fact more elaborate process than [they] would have received had the [department] given them an administrative hearing" before disallowing the accrued time off.  Id. at 365.

The principle made so clear by the Seventh Circuit in Brown—that not every contract dispute rises to the level of a due process violation—was subsequently considered in Lawrence v. Town of Irondequoit, 246 F.Supp.2d 150 (W.D.N.Y. 2002), a case with facts

far more analogous to those present here.  The plaintiffs in <u>Lawrence</u> were retired town employees who claimed that the Town's reduction of their retirement health care benefits from Blue Cross/Blue Shield's "Blue Million Plan" to a less costly plan deprived them of their protected property interest in the more comprehensive plan without due process of law. According to the retirees, who brought suit pursuant to 42 U.S.C. § 1983, the Town's 1978 Personnel Policies and Procedures Manual ("the 1978 policy") created a contract between them and the Town that assured lifetime Blue Million coverage if, at the time of retirement, the retirees had been employed on a regular basis by the Town for a minimum of 10 years and were 55 years old or more upon retirement, conditions the retirees had undisputably satisfied.  <u>Lawrence</u>, 246 F.Supp.2d at 153.

In 1990, the Town, in the face of financial difficulties, began to make changes to what had been fully paid health insurance to both active and retired employees.  <u>Lawrence</u>, 246 F.Supp.2d at 154.  Thereafter, in 2001, the Town passed a resolution whereby retirees receiving fully paid coverage through the "Blue Million Plan" were offered fully paid coverage through either "Blue Choice Select" or "Blue Choice Senior," both of which were less comprehensive than the "Blue Million Plan."  Those retirees desiring continued coverage through the "Blue Million Plan" were required to pay the difference between its costs and the costs of the lesser plans.  <u>Id.</u> at 155.  The retirees sued and the Town moved for summary judgment.

The district court assumed without deciding that (1) the 1978 policy created an obligation on the Town's part to provide the retirees with lifelong, fully paid "Blue Million

Plan" coverage; and (2) the coverage the retirees began receiving in 2001 was inferior to that available under the "Blue Million Plan."   The court then framed the issue as:

> whether a reduction in health care benefits to a retired employee, whose right to receive such benefits arises from a contract and has vested, constitutes a violation of a constitutionally protected property interest that cannot be deprived without due process of law.

Lawrence, 246 F.Supp.2d at 156.

Considering the Second Circuit's reference in S & D Maintenance Co., Inc. to Goldberg, Perry, and Mathews, and the interests at stake in those cases (welfare benefits, tenure, and social security benefits), the court concluded that the retirees' interest "in receiving a *specified level* of retirement health care benefits paid for by the Town '[was] qualitatively different from the interests the Supreme Court ha[d] . . . viewed as "property" entitled to procedural due process protection.'" Lawrence, 246 F.Supp.2d at 157 (emphasis added) (*quoting* S & D Maintenance Co., Inc., 844 F.2d at 966).   The court's determination was buttressed by the fact that the Lawrence retirees were not being deprived entirely of paid health insurance benefits, just coverage under the "Blue Million Plan," id. at 158, which stands in contrast to a situation where an eligible individual is absolutely denied the benefits sought, see Basciano v. Herkimer, 605 F.2d 605, 609 (2nd Cir. 1978) (former municipal employee who met eligibility requirements of City's Employees' Retirement System was entitled to disability retirement benefits under Administrative Code of the City of New York, and City could not wholly deny former employee those benefits without affording him due process of law).

16

Additionally, the <u>Lawrence</u> retirees' interest in the level of coverage they claimed arose from their contractual agreement, as set forth in the 1978 policy, by which the Town had obligated itself to provide coverage, and not from a state statute or constitutional provision.  For this reason, the court viewed the matter as "an ordinary contract dispute that should not [have been] elevated to a constitutional claim [or] decided under § 1983." <u>Lawrence</u>, 246 F.Supp.2d at 158; <u>see also</u> <u>Bell v. Westmoreland Cent. School Dist.</u>, 1991 WL 33161, at *3 (N.D.N.Y. Mar. 11, 1991) (refusing to find constitutionally protected property interest in continuation of post-retirement health insurance benefits and suggesting that "plaintiff [was] attempting to characterize this ordinary contract dispute in constitutional terms simply to avail himself of [federal] court's jurisdiction").

Not unlike the retirees in <u>Lawrence</u>, who claimed a protected property interest in receiving insurance coverage at the "Blue Million Plan" level, Plaintiffs in the instant case claim a protected property interest in the City's payment of their health insurance *premiums*. [<u>See</u> Doc. 38 at 19].  To be sure, in their affidavits, each Plaintiff refers to the elimination of his or her "retiree health insurance premium reimbursement" or "health insurance premium payment."  [<u>See</u> <u>id.</u>; Exh. 1 at 1 (Beggs affidavit); Exh. 2 at 1 (Crockett affidavit); Exh. 3 at 1 (Gutierrez affidavit); Exh. 4 at 1 (Hamner affidavit); Exh. 5 at 1(M. Lucero affidavit); Exh. 6 at 1 (P. Lucero affidavit); Exh. 7 at 1 (Newbanks affidavit); Exh. 8 at 1 (Pellicott affidavit); Exh. 9 at 1 (Saiz affidavit); Doc. 39; Exh. 10 at 1 (Wagner affidavit); Doc. 40 at 1 (Watkins affidavit); Doc. 41; Exh. 12 at 1 (Wofford affidavit); Doc. 42; Exh. 13 at 1 (Wood affidavit).

Thus, the alleged property interest that Plaintiffs here have been denied is not insurance coverage, in and of itself, but, instead, a particular level of reimbursement for the coverage they *do* receive as a result of the City's having opted to participate in the NMRHCA. [See Doc. Doc. 38 at 19 ("In the present case, the retirees have **_no_** health insurance premiums paid by the City. . . ." (emphasis in original)); at 20 ("Fourteen City employees who relied upon the provision of retiree health insurance for years were suddenly and unexpectedly denied **_all_** premium reimbursements for retiree health care. . . ." (emphasis in original)); at 21 ("Defendant denied **_all_** payment of retiree health insurance benefits." (emphasis in original)]. Plaintiffs do not dispute that, as a result of the City's decision to opt into the NMRHCA, they were able to purchase health care insurance for a portion of the actual cost and receive subsidized monthly medical premiums. [See Doc. 16 at 5 (noting November 21, 2000 letter to Plaintiffs, explaining that "as a result of the City's decision to opt in, the retiree would "have the option of purchasing medical care benefits through the NMRHCA for a portion of the actual cost; the program fund will subsidize a portion of [his/her] monthly medical premium if you choose to participate."); see also Doc. 25 at 2 (admitting the foregoing allegation)].

Additionally, Plaintiffs admit that due process protections do not attach to a "mere" change in insurance plans or reduction in benefits. [See Doc. 38 at 19].  Plaintiffs also include a lengthy quotation from Jackson, 652 F.Supp.2d at 341-342, in which the United States District Court for the Eastern District of New York distinguished the facts before it (*i.e.*, denial of all health coverage), from those presented in Lawrence, 246 F.Supp.2d at 153

18

(*i.e.*, reduction from the more comprehensive "Blue Million Plan" to allegedly less comprehensive plans), in finding that plaintiff Donald Jackson possessed a constitutionally protected property interest in health insurance benefits. [See Doc. 38 at 19 (*quoting* Jackson, 652 F.Supp.2d at 341-342. Jackson offers no support for Plaintiffs, as they have admittedly not been denied "all health coverage." Jackson, 652 F.Supp.2d at 342. Instead, more like the retirees in Lawrence, Plaintiffs are still receiving coverage, just not with the premium reimbursement they received prior to the elimination of Section 629.

Thus, as in Lawrence, Plaintiffs' claim of entitlement does not arise from a state statute or constitutional provision; at best, Plaintiffs' claim of entitlement arises from a contract with the City. To be sure, the New Mexico Supreme Court has already expressed as much in concluding that "genuine issues of material fact [remain] regarding the existence of contractual rights on behalf of [Plaintiffs] to continue receiving health insurance benefits at the rate they allege they and the [C]ity agreed upon at the time of their retirement." Beggs II, 210 P.3d at 803. Accordingly, having considered the precise issue presented (*i.e.*, the cessation of premium reimbursements for insurance benefits still provided) under the framework of Goldberg, Roth, Perry, and Mathews, as well as the analyses set forth in cases including, but not limited to, Jackson and Lawrence, this Court determines that the Due Process Clause does not safeguard against the alleged deprivation here because, "[i]n essence, this is an ordinary contract dispute that should not be elevated to a constitutional claim." Lawrence, 246 F.Supp.2d at 158. Because the Court concludes that Plaintiffs have

no constitutionally protected property interest here, it is unnecessary to address further Fourteenth Amendment matters.

### C. Plaintiffs' State-Law Claims

In addition to their Fourteenth Amendment claims, Plaintiffs allege a breach of contract and also seek relief pursuant to the New Mexico Declaratory Judgment Act. [See Doc. 1; Exh. 1 at 7-8].  In so doing, Plaintiffs invoke this Court's supplemental jurisdiction.

Section 1367 of Title 28 of the United States Code provides, in pertinent part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).  Pursuant to subsection (c), however, the Court may decline to exercise its supplemental jurisdiction if, among other things, it has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).  In other words, once "the bases for federal subject matter jurisdiction have been extinguished[,] the district court may decline to exercise continuing 'pendent or supplemental jurisdiction over [the] plaintiff's state claims." Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1236 (10th Cir. 1998) (dismissing without prejudice plaintiff's claims for, *inter alia*, breach of contract after having entered summary for defendant on plaintiff's First and Fourteenth Amendment claims); see also Taylor v. Meacham, 82 F.3d 1556, 1564 n.1 (10th Cir. 1996) ("Once a federal court dismisses claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over related state law claims.").

In the instant action, the entry of summary judgment in favor of the City on Plaintiffs' Fourteenth Amendment claims, as asserted in Count III and IV, extinguishes the basis for federal subject matter jurisdiction. See Lancaster, 149 F.3d at 1236. Accordingly, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state-law claims, as asserted in Counts I and II. See 28 U.S.C. § 1367(c)(3). In so declining, the Court has considered whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction. See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995). The Court is not persuaded that these factors weigh in favor of retaining jurisdiction. The policies that are the subject of Counts I and II are those of a municipality of the State of New Mexico and, thus, creatures of state law best suited to adjudication in a state court. Notions of comity and federalism demand that a state court try such claims in the first instance, absent compelling reasons to the contrary. See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990). That concept has particular resonance here, where this matter already has proceeded through the state-court system.

In addition, the Court's decision not to exercise supplemental jurisdiction is not necessarily fatal to Plaintiffs' state-law claims, as 28 U.S.C. § 1367(d) may provide for the tolling of any limitations period regarding these claims. For these reasons, Plaintiffs' claims (1) alleging a breach of contract, and (2) seeking relief pursuant to the New Mexico Declaratory Judgment Act will be dismissed without prejudice. See Lancaster, 149 F.3d at 1236 (where district court had entered summary judgment for defendant on plaintiff's federal

claims, affirming district court's decision to dismiss without prejudice plaintiff's state-law claims).

## III. CONCLUSION

For the reasons set forth more fully above, the Court concludes that Plaintiffs do not possess a protected property interest in the City's payment or reimbursement of their health insurance premiums.  The Court will therefore enter summary judgment for the City with respect to Counts III and IV of Plaintiff's *Amended Petition*.   The Court declines to exercise its supplemental jurisdiction over Counts I and II; those counts accordingly will be dismissed without prejudice.  Finally, all remaining pending motions will be denied as moot.

**IT IS, THEREFORE, ORDERED** that Defendant's *Amended Motion and Memorandum in Support of Defendant's Motion for Summary Judgment on Counts III and IV of Plaintiffs' Amended Petition* [Doc. 23] is **GRANTED;**

**IT IS FURTHER ORDERED** that Count III of the *Amended Petition* is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Count IV of the *Amended Petition* is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Count I of the *Amended Petition* is **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that Count II of the *Amended Petition* is **DISMISSED WITHOUT PREJUDICE**;

22

**IT IS FURTHER ORDERED** that *Defendant's Motion and Memorandum for Summary Judgment Based on the Statute of Limitations* [Doc. 16] is **DENIED AS MOOT;**

**IT IS FURTHER ORDERED** that *Defendant's Motion to Strike and for Protective Order (Based on Attorney-Client and Deliberative Process Privileges)* [Doc. 49] is **DENIED AS MOOT;**

**IT IS FURTHER ORDERED** that *Plaintiffs' Motion to Partially Strike Affidavit of Debi Lee [Paragraphs 4, 5, 8 and Exhibit One] and Memorandum in Support* [Doc. 53] is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that *Plaintiffs' Motion and Memorandum to Strike Affidavits of Stephen Doer from "Defendant's Reply to Plaintiffs' Response to Motion to Strike and for Protective Order (Based on Attorney-Client and Deliberative Process Privileges) [Document 62 Filed 03-26-10]* [Doc. 64] is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that the **PRETRIAL CONFERENCE** set for TUESDAY, November 9, 2010, at 9:00 a.m., the **CALL OF THE CALENDAR** set for THURSDAY, December 2, 2010, at 9:00 a.m., and the **JURY SELECTION/TRIAL** set for MONDAY, December 6, 2010, at 9:00 a.m. are hereby **VACATED**

**SO ORDERED** this 28th day of May, 2010, in Albuquerque, New Mexico.


**M. CHRISTINA ARMIJO**
United States District Judge